553 F.2d 561
 14 Fair Empl.Prac.Cas. 1594,
13 Empl. Prac. Dec. P 11,623
Phillip W. HOUGHTON, Plaintiff-Appellant,
and
W. J. Usery, Jr., Secretary of Labor, United States
Department of Labor, Intervenor Plaintiff Appellant,
v.
McDONNELL DOUGLAS CORPORATION, Defendant-Appellee.
 No. 76-1652.
 United States Court of Appeals,
Eighth Circuit.
 Submitted February 15, 1977.
Decided April 20, 1977.
As Amended June 1, 1977.
 
 Carin Ann Clauss, Associate Sol., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant; William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., Herman Grant, Regional Sol., U. S. Dept. of Labor, Chicago, Ill., and John J. Schlueter, St. Louis, Mo., on brief.
 Veryl L. Riddle, St. Louis, Mo., for defendant-appellee; names appearing on brief are Veryl L. Riddle, Thomas C. Walsh and Michael G. Biggers, St. Louis, Mo., on brief.
 John S. Yodice, Washington, D. C., for amicus curiae, Aircraft Owners and Pilots Ass'n.
 Before CLARK, Associate Justice,* HEANEY and WEBSTER, Circuit Judges.
 Mr. Justice CLARK.
 
 
 1
 Appellant Phillip W. Houghton brought this age discrimination action against McDonnell Douglas Corporation (the Company) following his removal at the age of 52, from the position of Chief Production Test Pilot and his subsequent termination from the Company's employ. He sued for reinstatement to his former position, an injunction against future discrimination, reimbursement of lost wages, liquidated damages, counsel fees and costs. The District Court found that age is a bona fide occupational qualification (BFOQ) for test pilots and that Houghton was properly terminated due to his inability to adjust to the new nonflying position offered him, thus denying him any relief. Houghton and the Secretary of Labor, who had intervened in the suit, have appealed. We find that the BFOQ is not a controlling test, under the facts here, and that Houghton was improperly terminated from his position as Chief Production Test Pilot. We, therefore, reverse the judgment and remand it for a new trial in accordance with this opinion.
 
 
 2
 1. The Facts: Houghton was hired by the Company in 1946 as an assistant aerodynamicist and in ten years was the Chief Production Test Pilot, a position he held until December, 1972. In July, 1971, the Company found it necessary to reduce its pilot staff due to a declining production rate, and it decided to do so by age. Houghton, as the oldest test pilot in The Company's history, and two other test pilots who were ages 48 and 46, were transferred from flight status. The Company had no set age policy for the transfer of test pilots to nonflying positions, relying solely on "intuitive judgment."
 
 
 3
 Houghton was offered a choice of placement either in the Flight Safety or Flight Simulation Departments. However, after interviews with the appropriate department managers, he decided that both positions were "very clearly . . . a large step downward . . . in job appeal, job status (and salary)." He advised the Company that neither was acceptable and sought outside employment but failed. He returned to the Company and assumed his former position without flight duties but this, too, was not satisfying. In November, 1972, he was offered a place in the Space Shuttle Simulation Program but rejected it for similar reasons. Ultimately, Houghton was terminated in December of 1972 for nonproductivity.
 
 
 4
 At all times during this period, Houghton maintained that the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. was being violated, particularly § 4(a) of the Act which made it unlawful to discharge or discriminate against an employee with respect to compensation, terms, conditions or privileges of employment. This section further provides that to limit, classify or segregate employees or deprive any individual of employment opportunities or otherwise affect his status because of age is unlawful. The Company admitted that Houghton was removed from flight status solely because of his age, but asserted that age was a BFOQ for test pilots under § 4(f)(1) of the Act.
 
 
 5
 2. The Evidence: Houghton was examined by Dr. Womack of the Company's medical staff in October, 1972, and was found to be in good health and medically qualified to fly high performance aircraft. In February, 1975, Houghton was examined by Dr. Proper who found him to be in exceptional physical condition even when compared to pilots and test pilots. He declared Houghton to be 99.9% certain of not suffering a heart attack or stroke while in flight. In support of its case, the Company called two experts who believed that age is an appropriate BFOQ for production test pilots, based on their studies reflecting the physiological and psychological changes that accompany the aging process in the general population. However, each conceded that changes in the aging process occur at diverse rates and varying degrees in different persons. In short, some pilots could fly beyond the age limit proposed, but in the absence of a functional test as to individual capability, an arbitrary age limit was necessary. In this connection, we note that each of the nine fatalities of the Company in the testimony of its planes involved pilots in their thirties.
 
 
 6
 While the Secretary's expert medical testimony agreed with that of the Company as to the general population, it went on to show that the aging process occurs more slowly and to a lesser degree among professional pilots. The evidence was, in our judgment, insufficient to support an inference of diminished ability among pilots of the age of Houghton to adequately perform their work.
 
 
 7
 Moreover, statistical studies reveal that the accident rate of professional pilots decreases with age. The former Director of Aerospace Safety for the United States Air Force testified that the major cause of accidents is poor pilot judgment, a factor which experience alone can remedy. Further, less than one percent of all aircraft accidents are traceable to medical disability, and of this one percent, the most frequent culprit is gastroenteritis which bears no relationship to age.
 
 
 8
 Additional documentary evidence indicates that the Air Force, Navy, NASA and the FAA do not restrict healthy pilots in their fifties from flying supersonic aircraft.
 
 
 9
 Despite this mountain of evidence against the Company's position, the District Court entered a judgment in its favor, finding that age had been satisfactorily proven as a BFOQ for test pilots. While we find no quarrel per se with the BFOQ test, we do not believe it controls here. Houghton's ability to continue to qualify as a test pilot must be judged under the provisions of the Act, including § 4(f)(1). In our view, the Company did not meet the burden imposed by the latter section.
 
 
 10
 3. The Law of The Case: First, the Company's admission that Houghton's removal was solely on the basis of his age presents a per se violation of § 4(a) of the Act. In attempting to implement the BFOQ exemption of § 4(f)(1), the Company has the burden of proving its actions were within the scope of the exemption. McMann v. United Air Lines, Inc., 542 F.2d 217, 219 n.3 (4th Cir. 1976); Hodgson v. First Federal Savings & Loan Ass'n, 455 F.2d 818, 822 (5th Cir. 1972). This burden includes a showing that the Company has a factual basis for believing that substantially all of the older pilots are unable to perform the duties of test pilot safely and efficiently or that some older pilots possess traits precluding safe and efficient job performance unascertainable other than through knowledge of the pilot's age. Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228, 235 (5th Cir. 1969); see also Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224, 236 (5th Cir. 1976). Here, however, the Company's evidence was of a general nature applicable only to the general population. In this regard, it shed little light on the relative capabilities of test pilots as a group to adequately perform their tasks beyond a certain age. Houghton's evidence, however, was of a specialized nature, showing age changes are much slower among test pilots as a group than among the general population. Indeed, there was no evidence that a test pilot's ability to perform his duties, both safely and effectively, was impaired in such manner as to justify the imposition of the arbitrary age limit applied by the Company here. On the contrary, it was shown that medical technology can predict a disabling physical condition in a test pilot with virtually foolproof accuracy. The record reflects that the safety record of the older professional pilots, within the sample studied, is better than that of the younger ones due to their experience. To cap the climax, even the Company doctors found Houghton in excellent physical condition, and we note a total absence of evidence which would indicate he was not capable of performing test pilot functions.
 
 
 11
 To uphold the finding of the District Court in the face of this evidence would "(allow) the exception (to) swallow the rule." Weeks v. Southern Bell Telephone & Telegraph Co., supra at 235. The findings of the District Court to the effect that age constitutes a BFOQ for Houghton are clearly erroneous. Green v. McDonnell Douglas Corp., 528 F.2d 1102, 1107 (8th Cir. 1976).
 
 
 12
 We note that Houghton claims he was "constructively discharged." However, a constructive discharge generally takes place when an employer makes working conditions so intolerable that the employee is forced to quit. Young v. Southwestern Savings & Loan Ass'n, 509 F.2d 140, 144 (5th Cir. 1975). Houghton did not resign. The motivating cause of his discharge was his insistence upon his statutory rights under the Act. This in itself is an illegal motivating factor on the part of the Company. Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975). His illegal transfer from flight status, in the face of his insistence upon his statutory rights, was the root cause of his severance. He is thus entitled to relief.
 
 
 13
 4. Relief: If on remand it is found that Houghton is still physically capable of safely and effectively performing the duties of Chief Production Test Pilot, he must be reinstated in that position, awarded such damages as he has suffered by reason of his discharge, and other relief, including attorney fees, to which he is entitled. In calculating damages, the District Court should appropriately consider the substantially lesser salary Houghton would have earned in the position offered him by the Company and such other factors as it deems relevant.
 
 
 14
 In the event the District Court finds on remand that Houghton is unable at that time to physically qualify for the position of Chief Production Test Pilot, it should then determine from the evidence when such disability occurred and fix the damages accordingly, including those suffered since such disability, awarding any other relief and damages as deemed appropriate.
 
 
 15
 It is so ordered.
 
 
 
 *
 Associate Justice Tom C. Clark, United States Supreme Court (Ret.), sitting by designation