Edward L. MURNANE, Plaintiff,

Ray Marshall, Secretary, United States Department of Labor, Plaintiff-Intervenor,

v.

AMERICAN AIRLINES, INC., Defendant.

Civ. A. No. 78–1217.

United States District Court, District of Columbia.

Nov. 8, 1979.

On Motion for Rehearing Dec. 18, 1979.

Eugene R. Fidell, Michael F. McBride, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., for plaintiff.

Donald R. McCoy, Denver, Colo., Carin Ann Clauss, Sol. of Labor, Washington, D.C., Marshall H. Harris, Dept. of Labor, Philadelphia, Pa., Sue Ann Wolff, U. S. Dept. of Labor, Washington, D.C., on brief, for plaintiff-intervenor.

Dean Booth, John G. Grubb, Jr., William H. Boice, Seward & Kissel, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

This action is brought under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (1976), ("the Act" or "ADEA"). Section 4(a)(1) of the Act, 29 U.S.C. § 623(a)(1), makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

The defendant American Airlines, Inc., ("American"), is a commercial airline. It is an employer within the meaning of the Act. 29 U.S.C. § 630(b). The plaintiff, Edward L. Murnane, is a retired Navy and Coast Guard aviator who applied for position as a pilot with American when he was forty-three years old. He is thus a member of the protected class under ADEA, 29 U.S.C. § 631. The plaintiff-intervenor, Ray Marshall, is the Secretary of the United States Department of Labor. Under the Act, he is responsible for implementation of its provisions. 29 U.S.C. § 625.

Plaintiff Murnane filed this action on June 30, 1978, alleging that defendant American wilfully violated the Act by failing or refusing to hire or consider him for employment because of his age. On January 19, 1979, Secretary Marshall was given leave to intervene as a party plaintiff.

In his prayer for relief, plaintiff originally sought an offer of employment with the defendant upon such terms and conditions as he would have had but for the alleged discrimination. However, in his memorandum in opposition to defendant's motion for summary judgment (filed January 29, 1979), plaintiff indicated that "at this stage" he would request only injunctive relief requiring remedial flight training and consideration of his application by American. In addition, he seeks the amount of back wages he would have received if the defendant had employed him, an additional equal amount of liquidated damages as provided by the Act, 29 U.S.C. § 626, as well as costs, attorneys' fees, and other appropriate relief. The Secretary joins in these requests on plaintiff Murnane's behalf; and also seeks to permanently enjoin the defendant from violating the provisions of section 4(a)(1) of the Act, 29 U.S.C. § 623, as set forth above.

On January 22, 1979, the defendant filed a motion for summary judgment. However, since a five-day trial was held before the Court beginning on January 29, 1979, the Court will decide the case on the basis of the evidence adduced at trial.

The defendant has presented several challenges to the Court's jurisdiction over this action. It also contends that the plaintiff has failed to discharge his burden of establishing a prima facie case of age discrimination within the meaning of the Act. In addition, defendant contends, among other things, that an age lower than plaintiff's at time of hiring is within the statutory exception under the Act for bona fide occupational qualifications (BFOQ), 29 U.S.C. § 623(f)(1). Finally, the defendant argues that whether or not there was impermissible age discrimination against plaintiff, he is not entitled to relief because he would not have been hired by American in any event. Thus, the issues before the Court are:

1) Whether the Court has jurisdiction over this action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626;

2) Whether plaintiff has established a prima facie case of age discrimination in violation of the Age Discrimination

in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.;

3) Whether an age lower than plaintiff's at time of hiring is a bona fide occupational qualification within the meaning of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(f)(1);

4) Whether plaintiff would be entitled to any relief whether or not discriminated against on the basis of age.

The Court will first set forth background information which it considers relevant to its decision. American's policies concerning pilot hiring are more properly articulated in light of its contention that an age lower than forty at time of hiring is a bona fide occupational qualification for the position of Flight Officer within the meaning of ADEA, as amended, 29 U.S.C. § 623(f)(1). The Court then will consider the issues set forth above *seriatim*. Accordingly, the following constitutes the Court's findings of fact and conclusions of law.

## II. BACKGROUND

### A. *The Plaintiff's Application*

Plaintiff applied for employment with American on April 1, 1976. He submitted an employment application and a "pilot supplemental sheet" at American's Los Angeles personnel office. The position for which he applied was that of Flight Officer, the entry level pilot position, which ultimately may result in advancement to the Captain position. The information received by American indicated that the applicant was forty-three years old. He had served on active duty as an aviator with the Navy and the Coast Guard for a total of twenty-six years. All agree that he met the *basic* requirements for the position of Flight Officer, which are discussed in detail below. He also possessed a Federal Aviation Administration (FAA) Flight Engineer Certificate, which must be obtained to perform the duties of Flight Officer. In addition, he possessed the Air Transport Pilot's rating which is required to act as co-pilot or pilot of a commercial aircraft.

In September, 1976, plaintiff Murnane contacted the defendant's employee, Mrs. Juanita McCullough, who had received his application in Los Angeles, to inform her of his temporary move to another city and to update his application. In November, 1976, the application was transferred to American's Dallas-Fort Worth, Texas office, with other pending pilot applications. Plaintiff was informed of this transfer in January, 1977. Apart from this, he heard nothing from American concerning the application.

During January, 1977, plaintiff complained to American representatives that his application was not being considered because of his age. This complaint was founded upon his familiarity with an industry-wide reluctance to hire older pilots. He was referred to American's Equal Employment Opportunity (EEO) officer, but was not given any reason at that time for failure to afford him an interview.

On February 1, 1977, plaintiff filed a complaint with the United States Department of Labor, alleging discrimination on the basis of age. He was notified on May 17, 1977, that the Department was undertaking informal remedial and conciliation efforts on his behalf. *See* 29 U.S.C. § 626(d)(2). On November 21, 1977, the Department notified plaintiff that the attempt at informal conciliation had failed, and he was therefore free to pursue independent legal action under the Act. At some time prior to May 26, 1977, a parallel complaint was filed with the California Fair Employment Practices Commission (FEPC).[1] This complaint was formalized on February 15, 1978. In response to the state agency's request for information regarding its hiring policies, American suggested that since plaintiff had chosen to pursue his federal remedies, the FEPC investigation should be closed, and refused to furnish the information requested.

---

1. Although this complaint is undated, plaintiff received a letter dated May 26, 1977, from the California FEPC regarding his complaint. Thus, the evidence is clear that the complaint had been filed prior to that date.

For purposes of this lawsuit, all parties agree that defendant's conduct after December 31, 1976, with respect to plaintiff's application, is irrelevant. This agreement is based on the grounds that (a) any rejection of the plaintiff which the Court finds to have occurred must have occurred during 1976 and (b) plaintiff filed his federal employment discrimination complaint shortly after that date, on February 1, 1977. Plaintiff's conduct and performance on other jobs after December 31, 1976, however, is relevant to the issue of whether plaintiff would be entitled to any relief whether or not discriminated against on the basis of age. This issue will be considered in detail by the Court in part III. E., *supra*, of this memorandum opinion.

### III. THE JURISDICTIONAL CHALLENGES

Defendant American presents three challenges to the Court's jurisdiction over this action. The first two challenges encompass American's argument that plaintiff failed to comply with the "jurisdictional prerequisites" of the Act. The final challenge is founded upon the applicable statute of limitations. The Court will consider these challenges *seriatim*.

■ First, American challenges plaintiff's filing of his formal "Notice of Intent to Sue" with the Department of Labor on April 25, 1977, as untimely under § 7(d)(1) of the Act, 29 U.S.C. § 626(d)(1). Prior to the Act's amendment in 1978, this section required a complainant to file a formal "Notice of Intent to Sue" with the Department of Labor within 180 days of the occurrence of the alleged unlawful employment practice.[2] However, § 7(d)(1) of the Act simply is not applicable to plaintiff. Rather, it is § 7(d)(2) of the Act, 29 U.S.C. § 626(e)(2), with which plaintiff must comply. Where, as here, the alleged unlawful practice occurs "in a State which has a law prohibiting discrimination in employment

because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice", 29 U.S.C. § 633, the complainant must file a formal "Notice of Intent to Sue" within *300* days after the alleged unlawful practice occurred or within 30 days after receipt by the complainant of notice of termination of proceedings under State law, whichever is earlier. 29 U.S.C. § 626(d)(2). Since the alleged unlawful practice occurred in California which has both an age discrimination law and the California Fair Employment Practice Commission (FEPC) which enforces that law, the 300-day, rather than the 180-day, notice requirement is applicable to plaintiff.

■ The Act does not specifically define the time when an alleged unlawful practice is deemed to have occurred. Under such circumstances, any ambiguity as to the date of that occurrence should be resolved in favor of the complainant. *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92 (8th Cir. 1975). For purposes of the 300-day notice requirement, the alleged unlawful practice would be said to have occurred on the date plaintiff received notice of, or could reasonably have been expected to have known of, the alleged unlawful rejection of his employment application. There is substantial question in this case as to the date on which the rejection occurred. It is American's position that it *never* "rejected" plaintiff, because it never "rejects" any applicant. Certainly, American never notified plaintiff of his "rejection". The Court views this contention as frivolous and merely a futile semantic exercise on American's part. Further, the Court finds American in the anomalous position of denying that a rejection ever occurred while asserting that a rejection did occur and plaintiff was adequately informed of it, but did not file timely notice.

■ In order for plaintiff's April 25, 1977 filing with the Department of Labor to be

---

**2.** Section 7(d)(1) of the Act, 29 U.S.C. § 626(d)(1), was amended by the Age Discrimination in Employment Act Amendments of 1978, Pub.L.No. 95–256, § 4(b)(1), 92 Stat. 190, which substituted references to the filing of a charge with the Secretary alleging unlawful discrimination for references to the filing with the Secretary of notice of intent to sue.

considered untimely, plaintiff must have been rejected, and have notice of the rejection, prior to June 25, 1976. However, evidence has been presented which clearly establishes that plaintiff's application was updated and forwarded with other *pending* applications to American's Dallas-Fort Worth office in November, 1976. Certainly, plaintiff was not rejected prior to this date. Thus, the applicable notice requirement of the Act, 29 U.S.C. § 626(d)(2), is not a bar to the Court's jurisdiction over this action.

[redacted] In its second "jurisdictional prerequisite" challenge, American maintains that plaintiff's failure to file a formal complaint with the California FEPC until February 15, 1978, nearly one year after the initiation of federal administrative action, constitutes a failure to comply with § 14(b) of the Act, 29 U.S.C. § 633(b).[3] Therefore, American argues, this Court lacks subject matter jurisdiction over this suit. Again, the Court disagrees.

Plaintiff filed an informal complaint with the Secretary of Labor on February 1, 1977. He then filed a formal "Notice of Intent to Sue" with the Secretary on April 25, 1977. At some time prior to May 26, 1977, a parallel complaint was filed with the California FEPC.[4] This state administrative complaint was formalized on February 15, 1978. Finally, plaintiff filed this suit in United States District Court on June 30, 1978. It is the delay of nearly ten months between the formal filings with the federal and state agencies which American maintains renders this Court's jurisdiction defective. Apparently, American also contends that the Act requires plaintiff to first resort to the state agency before pursuing federal administrative action.

The recent Supreme Court decision in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), is dispositive of American's challenge in regard to plaintiff's state administrative action. *Oscar Mayer* makes it clear that the filing of state administrative proceedings is, as American maintains, a jurisdictional prerequisite to federal relief under the Act. However, under the Act, "grievants may file with state and federal agencies simultaneously." 99 S.Ct. at 2072. Thus, the Act permits concurrent rather than sequential state and federal administrative jurisdiction in order to expedite the processing of age discrimination claims. Furthermore, ADEA grievants may file with the state before *or after* they file with the Secretary of Labor. 99 S.Ct. at 2072, n. 4. Thus, plaintiff's federal remedy is not jeopardized simply because he filed his complaint with the appropriate federal agency before filing a complaint with the authorized state agency. Nor is American's objection to the delay between the federal and state filings fatal to the Court's jurisdiction over this action. Clearly, plaintiff's informal complaint to the state agency prior to May 26, 1977, only one month after the formal federal filing, met the statutory purpose of § 14(b) of the Act, 29 U.S.C. § 633(b). As articulated in *Oscar Mayer*, this purpose is to permit the state agency an opportunity to attempt informal conciliation. *See* 99 S.Ct. at 2072. In addition, plaintiff's formal filing with the California FEPC on February 15, 1978, occurred more than sixty days prior to the bringing of this action on June 30, 1978. Thus, the sixty-day period for the pendency of state administrative proceedings had elapsed, as required by § 14(b) of the Act, 29 U.S.C. § 633(b). Therefore, the Court concludes that plaintiff is in full compliance with the jurisdictional prerequisites of § 14(b) of the Act, 29 U.S.C. § 633(b).

3. Section 14(b) of the Act, 29 U.S.C. § 633(b), provides in pertinent part:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated.

4. *See* n. 1, *supra*.

American's final jurisdictional challenge maintains that plaintiff failed to meet the applicable statute of limitations. The Act requires that civil actions be commenced within two years of the alleged unlawful practice, except in the case of willful violations, where the period is extended to three years. 29 U.S.C. § 626(e) (incorporating 29 U.S.C. § 255). The Court finds this challenge without merit.

This action was filed in the District Court on June 30, 1978. The case would be barred only if plaintiff was rejected prior to June 30, 1976, and the defendant's action was not willful. The Court has already found that the plaintiff was not rejected before November, 1976. Therefore, the Court finds that plaintiff timely filed this suit and American's statute of limitations challenge is patently without merit.

## IV. DISCUSSION

A. *The Existence of the "Age 30 Guideline", Without an Admission That It Was Applied to the Plaintiff, Does Not Constitute a Per Se Violation of the Act Under Houghton v. McDonnell-Douglas.*

 Plaintiff asks this Court to find that the defendant's conduct in relation to his application constitutes a *per se* violation of the Act, as occurred in *Houghton v. McDonnell-Douglas Corp.*, 553 F.2d 561 (8th Cir. 1977), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). In *Houghton*, the employer admitted that it had transferred the plaintiff from flight status as a test pilot solely on the proposition that age fell within the Act's exception for bona fide occupational qualifications (BFOQ), 29 U.S.C. § 623(f)(1). When the court found that age of less than fifty was not a BFOQ for an experienced test pilot, it was clear that the admitted application of such a standard to the plaintiff constituted a violation of the Act. Questions regarding plaintiff's *prima facie* case and the defendant's alleged non-discriminatory reasons for the rejection simply did not arise due to this admission.

This case is not one of *per se* age discrimination, as was found in *Houghton*. American does not deny that it has an unwritten guideline of age thirty for pilot hiring (the "age 30 guideline" is discussed in part D *infra*). However, it contends that the guideline was not applied to plaintiff. Here, unlike the defendant in *Houghton*, American does not admit that age was a criteria, much less the sole criteria, used in considering plaintiff's application. Under these circumstances, the plaintiff must carry his initial burden of proof of a *prima facie* case, as in other discrimination cases in which the defendant denies having used discriminatory criteria in making a decision.

B. *Burden of Proof in ADEA Cases.*

 As in other civil litigation, the initial burden of proof in cases brought under ADEA is upon the plaintiff. The criteria for establishing a *prima facie* case of employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, were set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These criteria are applicable to cases under ADEA. *See Cova v. Coca Cola Bottling Co. of St. Louis*, 574 F.2d 958 (8th Cir. 1978). Under the criteria established in *McDonnell-Douglas*, the plaintiff is required to demonstrate: (1) that he belongs to the protected class, (2) that he applied and was qualified for a job for which the employer was seeking applicants, (3) that he was rejected despite his qualification, and (4) that, after his rejection, the employer continued to seek applicants with similar qualifications for the position for which plaintiff applied. Assuming that the plaintiff successfully establishes these four elements by a preponderance of the evidence, the defendant may rebut the inference of discriminatory motive resulting from such a showing, by articulating a legitimate, non-discriminatory motive for its treatment of the plaintiff. *McDonnell-Douglas, supra* 411 U.S. at 802, 93 S.Ct. 1817. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). If the defendant makes this showing, the plaintiff may then attempt to show that the defend-

ant's justification is a pretext for discriminatory action, or was discriminatory in application. *McDonnell-Douglas, supra* 411 U.S. at 804–7, 93 S.Ct. 1817. In a case under ADEA, as here, the defendant also may attempt to prove that, although it worked to the detriment of the protected class of which plaintiff is a member, the challenged standard is a bona fide occupational qualification (BFOQ) reasonably necessary to the normal operation of its business. 29 U.S.C. § 623(f)(1). The Court will now consider whether plaintiff has made out a *prima facie* case of age discrimination by a preponderance of the evidence.

C. *Notwithstanding the Bona Fide Occupational Qualification Issue, Plaintiff Has Made Out a Prima Facie Case of Age Discrimination by a Preponderance of the Evidence.*

Plaintiff was forty-three years of age when he applied for employment with American. As such, he is clearly within the protected age group under the Act. 29 U.S.C. § 631.

 The Court finds it equally clear that plaintiff was qualified and applied for the position of Flight Officer for which American was seeking applicants. American concedes that plaintiff meets the basic qualifications of American pilots. These qualifications are as follows:

| | |
|---|---|
| Age: | Minimum 21 |
| Height: | 5′ 6″–6′ 4″ |
| Weight: | In proportion to height. |
| Visual Acuity: | 20/20 without glasses, each eye separately. |
| Education: | College degree or its equivalent preferred. |
| Citizenship: | No restrictions; however, applicants must be able to read, write, fluently speak and understand the English language. |
| Certificates, Ratings & Permits: | Valid FAA Commercial Type Pilot Certificate with an instrument rating, no limitations -OR- Current Air Transport Pilot Rating.<br><br>Flight Engineer Basic & Turbojet written examination passed, or FEX, within the past 24 months -OR- Valid Turbojet Flight Engineer Certificate.<br><br>Valid FCC Restricted Radio Telephone Operator Permit. |
| | Valid First Class FAA Medical Certificate. No Waivers. |
| Flying Time: | Commensurate with other qualifications. |

To establish his *prima facie* case, the plaintiff only need show that he meets the basic requirements of the job. He need not show as part of his *prima facie* case, as American contends, that his "competitive qualifications" were such that he would have been hired had the defendant not applied any discriminatory standards to his application. Such "competitive qualifications" are considered by American in a stage of the application process which plaintiff's application never, in fact, reached. The *prima facie* requirement that plaintiff show he was qualified for the position sought should not be construed to require plaintiff to show that, ultimately, he would have been hired. Rather, the Court is of the opinion that a requirement that plaintiff show that he possessed the job qualifications regularly considered by American at the stage in the application process in which plaintiff was, in fact, rejected, comports with the test envisioned by the Supreme Court in *McDonnell-Douglas*. It is clear that plaintiff was rejected in the first "stage" of the application process where only the basic qualifications for the position of Flight Officer are considered. Therefore, plaintiff need only show that he met these qualifications at the time he was rejected. The "competitive qualifications" considered by American in a later stage of the application process are more properly viewed in light of the issue of whether plaintiff would be entitled to relief whether or not discriminated against on the basis of age.

The Court has already addressed the issue of whether and when American rejected plaintiff. As already noted, American contends that it never "rejected" plaintiff because it never "rejects" any applicant. The Court will not indulge American's semantic agility describing its selective inaction concerning pilot applications. The Court views American's failure to hire plaintiff, despite his qualifications, as a rejection.

Finally, the Court finds that American has continued to hire applicants, of similar or lesser qualifications than the plaintiff's since the time of plaintiff's application. Since April 1, 1976, when plaintiff filed his application, American has hired 443 pilots. All of these pilots were under the age of thirty-five and outside the protected class under the Act. Many of these successful applicants were less qualified than the plaintiff in terms of total flying experience, which American propounds as the major factor in determining selection for the position of Flight Officer.

It is clear, therefore, that plaintiff has successfully met his initial burden of making out a *prima facie* case of age discrimination. The burden of rebutting this showing thus shifts to American. While American advances several arguments in an attempt to carry its burden, the Court finds that American's bona fide occupational qualification defense is persuasive and dispositive of this case. Therefore, it is not necessary for the Court to reach the merits of American's other attempts to rebut plaintiff's *prima facie* case, and the Court declines to do so.

D. *Age of Less Than Forty at Time of Hiring is a Bona Fide Occupational Qualification for the Position of Flight Officer at American.*

 Section 4(f)(1) of ADEA, 29 U.S.C. § 623(f)(1), which provides an exception to the prohibition against age discrimination, reads in pertinent part:

(f) It shall not be unlawful for an employer

\* \* \* \* \* \*

(1) to take any action otherwise prohibited under subsection (a) \* \* \* of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of

the particular business, or where the differentiation is based on reasonable factors other than age; \* \* \*

In attempting to implement the bona fide occupational qualification (BFOQ) exception of the Act, American has the burden of proving its actions were within the scope of the exception. *Houghton v. McDonnell-Douglas Corp.*, 553 F.2d 561, 564 (8th Cir. 1977), *cert. denied* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977).

While American has advanced several BFOQ arguments, the Court concludes that the argument discussed in detail *infra,* is dispositive of this case. Therefore, it is not necessary for the Court to reach the merits of the other BFOQ arguments presented by American, and the Court declines to do so. The Court sets forth certain background information which it considers relevant to consideration of the BFOQ issue, and then proceeds to address American's argument.

American is a scheduled air carrier whose principal business is the safe transportation of passengers in interstate and international commerce. American presently has four kinds of aircraft in its fleet: the Boeing 747, the DC–10, the Boeing 707, and the Boeing 727. There are three cockpit positions in each of these aircraft and, since 1964, it has been American's policy to hire only pilots for these positions.[5] The three cockpit positions are Captain, Co-pilot, and Flight Officer.[6] In all cases, the entry level position at American is Flight Officer.

It is American's policy to hire only future Captains. In other words, every pilot considered and hired by American is evaluated as a future Captain and is expected to progress to the position of Captain. American has an "up-or-out" policy, which requires the pilot to demonstrate the ability

---

**5.** This policy is a result of negotiations with the union representing American's pilots, the Allied Pilots Association. American has "professional" Flight Officers, i. e., non-pilot Flight Officers, who continue to work for American, but no non-pilots have been hired for the cockpit positions since 1964.

**6.** On other airlines, these positions may be designated differently. For example, the Flight Officer position is sometimes referred to as the Second Officer or Flight Engineer position, and the Co-pilot is sometimes designated as First Officer.

to progress to the next highest cockpit position or be terminated.[7]

At the present time the progression from Flight Officer to Co-pilot to Captain takes approximately fourteen to twenty years, and averages sixteen years, with the time equally divided between the Flight Officer and Co-pilot positions. Progression from one cockpit position to another is controlled by the availability of openings for Co-pilots and Captains, seniority, and the terms of the applicable collective bargaining agreement. Crewmembers undergo additional screening, training and testing before advancing to the next position.

The Federal Aviation Administration ("FAA") has promulgated regulations which require American to retire its Captains and Co-pilots at age sixty ("the FAA age 60 rule"). 14 C.F.R. § 121.383(c) (1979).[8] American does not allow former Captains, age sixty and over, to bid back to the Flight Officer position. Therefore, no pilot who has reached his or her sixtieth birthday continues to work in an American cockpit.[9]

 In addition to its basic Flight Officer prerequisites, discussed *supra,* American maintains an unwritten policy against hiring pilot applicants over age thirty. This policy has been described as the "age 30 guideline" and appears to be consistent with the custom throughout the airline industry. American no longer disputes the existence of this guideline but contends that it is flexible and does not constitute an absolute, across-the-board policy. Furthermore, American's contention that a maximum hiring age of forty is a BFOQ under the Act, if found persuasive, would justify

the guideline.[10] The Court will now address this contention.

American contends that a policy of hiring only pilots younger than forty years of age enhances the safety of American's operation and reduces the risk to American's passengers.

American's argument may be summarized as follows:

1) American has a statutory duty to conduct its business with the highest degree of care for the safety of its passengers.

2) In order to maximize safety and minimize risk of injury or death, the American Captain must undergo a long and intensive training program *at American.*

3) Since it takes an average of sixteen years to progress from Flight Officer to Captain, an applicant hired at an age above forty would not acquire the requisite experience needed to maximize safety, before being forced to retire at age sixty by the FAA age 60 rule.

4) Consequently, elimination of the age-below-40 hiring policy will increase the likelihood of risk of harm to passengers and crew.

The Court finds this argument persuasive. It is the Captain who is in command of American's aircraft and who is primarily responsible for the safety of American's passengers and crew. The evidence indicates that pilot factors or "pilot error" are the probable cause of 90% of aircraft accidents. If an American Airlines Captain errs, the death or injury of as many

---

7. This policy is shared by some other scheduled air carriers as well. For example, there is testimony indicating that Delta Airlines has such a policy.

8. The FAA age 60 rule has been upheld as a reasonable exercise of administrative discretion. *O'Donnell v. Shaffer,* 160 U.S.App.D.C. 266, 491 F.2d 59 (D.C. Cir. 1974).

9. The policy of disallowing the return of Captains to the Flight Officer position appears to be shared by several other airlines as well. Such a policy permits American to train *future*

Captains and enables the Flight Officer to gain valuable and necessary experience for their ultimate Captaincy.

10. The Act only protects individuals who are at least forty but less than sixty-five years of age. 29 U.S.C. § 631. Thus, it is the effect of American's "age 30 guideline" on individuals over the age of forty which must be justified as within the BFOQ exception. Presumably, American is free to reject individuals under the age of forty on account of their age alone.

as 400' passengers and crew, and the destruction or damage of a multi-million dollar aircraft, can result.

The primary function of an airline is to transport passengers safely from one point to another. *Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385, 388 (5th Cir. 1971), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Indeed, the Court finds that safety is the essence of American's business. The airline industry, including American, has a duty pursuant to the Federal Aviation Act of 1958 to conduct its business with "the highest possible degree" of care for the safety of its passengers. 49 U.S.C. § 1421(b) (1976). *See Condit v. United Air Lines, Inc.,* 558 F.2d 1176 (4th Cir. 1977), *cert. denied,* 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 531 (1978). Heeding that duty, the airline industry has over the years changed flying from a mode of transportation which was originally considered "inherently dangerous" to one which is the safest mode now available. The airline industry is duty bound to attempt to reduce risk to its passengers. As the court in *Harriss v. Pan American World Airways, Inc.,* 437 F.Supp. 411 (N.D.Cal.1977) explained:

> As an air carrier with a public duty to operate with the highest degree of safety, Pan Am [and American] is in the business of avoiding and managing the risks resulting from low probability occurrences which could have extremely serious consequences. Indeed, such risk management is of the essence of Pan Am's business, since aircraft accidents and incidents are invariably unique and low probability occurrences.

437 F.Supp. at 434. Thus, it is American's duty to attempt to eliminate as much risk to the passenger as possible, even if the probability of an accident or incident resulting from that risk is extremely low.

In order to minimize safety-related risks, the American Captain undergoes a long and intensive training program. He begins his training and exposure to American's techniques, procedures, and equipment as a Flight Officer. As such, he receives training and day-to-day experience with American's aircraft. He is responsible for managing and monitoring all major systems of the aircraft. The Flight Officer is also responsible for pre-flighting the aircraft. Additionally, he or she is exposed to American's inflight and cockpit procedures and discipline. Even though the Flight Officer's duties do not include flying the aircraft,[11] American considers, and the Court so finds, that the experience gained and the time spent in the position of Flight Officer is essential for American's future Captains.

After seven to ten years as a Flight Officer, the crewmember upgrades to the position of Co-pilot. As Co-pilot, the crewmember's duties include flying the aircraft with the Captain. The Co-pilot is second in command and has greater responsibility than the Flight Officer. Again, he or she receives valuable additional exposure to and training in American's procedures, equipment, routes, and cockpit discipline. In addition, he now spends considerable time at the controls of the aircraft. After seven to ten years as a Co-pilot, the crewmember is ready to upgrade to the position of Captain. The major difference between the positions of Co-pilot and Captain is the added command responsibility, which is considerable. The Captain must make the decisions, whether it be a routine matter or an emergency situation.

All parties agree that experience is the key to continued or increased safety as a pilot advances in age. Plaintiff and the Department of Labor have attempted to show that experience flying in large military aircraft or helicopters is comparable or valuable experience for a commercial airline pilot. The Court does not agree. While such experience has some minimal value, the Court finds that the best experience an American Captain can have is flying for American Airlines. Indeed, safety of flight

---

11. However, the Court notes, in the event of an emergency, the Flight Officer may indeed have to take command and fly the aircraft.

and minimization of risk to passengers and crew is enhanced to the greatest extent by having Captains who have as much of that experience as possible. The Court finds that such experience is reasonably necessary to the essence of American's business, the safe transportation of airline passengers from one point to another. Since this experience cannot be acquired unless American's hiring policy is maintained, the Court finds that age of less than forty at time of hiring is also reasonably necessary to the essence of American's business. *Diaz, supra* at 388.

The Court finds it equally clear that elimination of American's hiring policy might jeopardize the life of one more person than might otherwise occur under the present hiring practice. *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859 (7th Cir. 1974), *cert. denied sub nom., Brennan v. Greyhound Lines, Inc.*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975). *See also Spurlock v. United Airlines*, 475 F.2d 216, 219 (10th Cir. 1972). Indeed, as the Fifth Circuit said in *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 238 (5th Cir. 1976):

> We emphasize safety in busing just as we would in a variety of other industrial areas where safety to [third parties and] fellow employees is of such humane importance that the employer must be afforded substantial discretion in selecting specific standards which, if they err at all, should err on the side of preservation of life and limb.

The evidence indicates, as stated above, that "pilot error" accounts for 90% of all aviation accidents. There is credible and persuasive evidence that the incidence of aviation accidents decreases as the age of the pilot increases. The Court finds that this phenomenon of reduced accidents with increase in pilot age is clearly a function of the amount of experience acquired by the pilot. As an *active* airline pilot advances in age, he necessarily acquires increased flying experience. Indeed, as demonstrated by credible and persuasive evidence, older pilots have fewer accidents than younger pilots. As already indicated, the Court has found that the *best* experience an American

Captain can have is acquired by flying American aircraft in American's three cockpit positions. Under American's present hiring policy, a fifty-five to fifty-nine year old American Captain has been flying as an American Captain for at least ten to fifteen years. In addition, he spent approximately eight years in each of the other two cockpit positions as Co-pilot and Flight Officer. It seems clear that the safest Captain is not an American Captain who first assumes that position at age fifty-five to fifty-nine, but an American Captain who has the depth of experience that is the result of ten to fifteen years flying *as a Captain* for American. The Court concludes that if American were to hire pilots above the age of forty at time of hiring, it would not be possible for them to acquire this essential experience before they are forced to retire by the FAA age 60 rule. Therefore, the Court finds that American had a factual basis for believing that all or substantially all pilots of an age above forty at the time of hiring would be unable to perform safely and efficiently the duties of the job involved. *Weeks v. Southern Bell Telephone and Telegraph Co.*, 408 F.2d 228, 235 (5th Cir. 1969).

In accordance with the foregoing, the Court finds that an age of less than forty at time of hiring is a bona fide occupational qualification for pilot applicants at American Airlines. In some cases, the individual interest in being free of employment discrimination on account of age must give way to the societal interest in having the safest air transportation system possible. Congress recognized that such a situation might exist and, for that reason, created the BFOQ exception to the general statutory prohibition against age discrimination. It seems clear that American's hiring policy furthers the strong public interest in achieving the safest aviation industry possible. American should be able to apply a reasonable general rule in order to minimize the risks of the disastrous consequences of an airline accident. The Court concludes that American's hiring policy implements such a rule.

In accordance with the Court's finding that age under forty at the time of hiring is a BFOQ for the position of Flight Officer at American, plaintiff's complaint will be dismissed and judgment will be entered for defendant American. Furthermore, the Court's resolution of the final issue, whether plaintiff would be entitled to relief whether or not discriminated against on the basis of age, also mandates this result.

E. *The Evidence Indicates That Plaintiff, Whether or Not Discriminated Against on the Basis of Age, Is Not Entitled to Any Relief.*

▮ American contends that since the evidence indicates that it would not have hired plaintiff in any event, plaintiff could not have been injured by any alleged age discrimination and consequently is entitled to no relief. The Court concurs.

In *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the Supreme Court was confronted with a suit by Mexican Americans challenging a policy which prohibited transfer, within the trucking company, from city to line driver positions. The Court observed:

> The District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices . . .

431 U.S. at 403–04, 97 S.Ct. at 1897. The Court further emphasized:

> Even assuming arguendo, that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the respondents had not been injured because they were not qualified and would not have been hired in any event.

431 U.S. at 403 n.9, 97 S.Ct. at 1897 n.9. *See also International Brotherhood of*

*Teamsters v. United States*, 431 U.S. 324, 369 n.53, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Here, American has persuasively shown that plaintiff is not entitled to relief, because it would not have hired him in any event.

The first stage of American's application process consists of an initial review of the written application. Plaintiff's application has never been considered beyond this point. Even if his application had received favorable consideration at this stage, however, it is clear from credible and persuasive evidence that plaintiff would not have been selected during the later stages of the pilot selection process. Included in these later stages are two medical examinations, interviews by the Manager of Pilot Recruitment and a panel of American pilots, a psychological test, a verification of the information contained in the written application, and a simulator evaluation ride.

In approximately June of 1977, plaintiff was hired as a pilot by Sis-Q Corporation ("Sis-Q"). Sis-Q is a California corporation which operates one daily roundtrip between Livermore, California, and various points in Nevada. This flight is made with a F-27 aircraft, which is owned by Livermore Laboratory.[12]

Sis-Q has a contract with Livermore Laboratory which requires it to provide pilots and maintenance for the F-27, a plane with two pilot positions in the cockpit. The contract also requires 1) Sis-Q pilots to be type-rated by the FAA in the F-27,[13] 2) Sis-Q pilots to use Part 121 standards,[14] and 3) Sis-Q to complete the training and type-rating certification of a new pilot within forty days of the hiring date of that pilot. If a new pilot is not type-rated within that

---

12. The F-27 is a two-engine turboprop aircraft that has a capacity of 40 passengers.

13. A type-rating in an aircraft simply means that the FAA has certified that the pilot in question is qualified to fly that particular kind of aircraft.

14. Part 121 of the Federal Aviation Regulations. 14 C.F.R. § 121 (1979). These are the same standards used by scheduled air carriers, including American.

period, he must, under the contract, be terminated.

Plaintiff was selected from approximately 200 applicants and received the same basic training as other newly hired pilots receive at Sis-Q. He was sent to a ground school for the F–27,[15] and, as part of that ground school training, received flight simulator[16] instruction in an F–27 simulator located at Allegheny Airlines in Pittsburg, Pennsylvania. Plaintiff received three training sessions in the simulator. He then volunteered for an FAA check ride, which was administrated by an FAA inspector who graded his ability to perform certain routine and emergency procedures in the simulator.

Plaintiff failed this check ride. The FAA inspector rated plaintiff deficient in several categories. First, he was unable to perform a simple "Preflight Inspection", despite the fact that a checklist is provided for this procedure. The purpose of the Preflight Inspection is to enable a pilot to determine whether the aircraft is safe to fly. Second, plaintiff was rated unsatisfactory in the category of "Other Instrument Approaches", which tests his ability to make a variety of instrument approaches, many of which are commonly utilized in the airline industry. Third, plaintiff was graded unsatisfactory in the "Steep Turns" category. Fourth, plaintiff was graded unsatisfactory in "Area Departure and Arrival", in part because he failed to lower the landing gear while landing. Credible testimony described this particular shortcoming as a "fatal" error.

Other categories in which plaintiff was rated unsatisfactory include, "Approaches to Stalls,"[17] "Normal and Abnormal Procedures,"[18] and "Emergency Procedures." During the "Emergency Procedures" portion of the check ride, plaintiff was tested on emergency landing procedures, no flap approach procedures, and getting the landing gear and flaps extended in emergency situations. Finally, plaintiff received an unsatisfactory score in the check ride category entitled "Judgment". According to credible testimony, "Judgment" is the ability of the individual to make the proper decisions at the proper time for the safety of passengers, crew and aircraft.

Plaintiff's simulator instructor at Allegheny, Captain Frank Burns, testified persuasively that plaintiff was a "below average" student, specifically, in the bottom 25% of all the students he had ever taught. Captain Burns was also present at plaintiff's FAA check ride and testified that plaintiff did "very poorly."

After his difficulties in the simulator, plaintiff returned to California for in-flight training, where he again experienced problems and was unable to perform satisfactorily. He was given additional training— more than the average Sis-Q pilot—in the hope that his progress would improve. It did not. Due to the forty-day time limit on pilot certification contained in Sis-Q's contract, plaintiff was scheduled for a certification ride in the F–27 with an FAA inspector. Plaintiff failed this in-flight check ride and was not certified by the FAA. Plaintiff was then terminated by Sis-Q due to his inability to receive FAA certification.

Shortly after his termination with Sis-Q, plaintiff was hired by Trans International Airlines ("TIA"), a supplemental charter,

---

**15.** At ground school, a pilot is generally in a classroom environment where he learns the basic systems, including, for example, the mechanical, hydraulic, and electrical systems of the particular aircraft.

**16.** A flight simulator is a mechanical device that simulates, as closely as possible, the environment, systems, and flight of the particular aircraft.

**17.** The "Approaches to Stalls" category tests the ability of the individual to recognize when the airplane is approaching a stall configuration where it would literally cease to fly, and also tests the procedure which the individual must utilize to recover from this configuration.

**18.** Normal procedures are the procedures that the pilot must perform to properly fly the airplane. Abnormal procedures are those procedures that are utilized when items of equipment fail, e. g., generator failure, loss of an inverter, electrical problems, or hydraulic problems.

passenger, and air freight carrier, based in Oakland, California. Plaintiff was hired by TIA as a Co-pilot in a L–382 or C–130 aircraft.[19] After ground training, he was evaluated in a basic instrument procedures trainer, which, unlike a simulator which contains both flight instruments and other aircraft systems, is designed only to train and test basic instrument procedures. Despite the fact that the average TIA trainee receives only one chance to perform satisfactorily on the basic instrument evaluation ride, plaintiff was given three evaluation rides. His overall performance for each ride was unsatisfactory. Captain Tichacek, who personally observed and evaluated plaintiff's final ride, explained that plaintiff's performance was unsatisfactory overall for two principal reasons: first, plaintiff was very weak in basic instrument procedures; and, second, plaintiff did not exhibit good judgment.

The Court is cognizant of the fact that plaintiff's capabilities as a pilot were evaluated in terms of his ability to fly the F–27 and L–382 aircraft, neither of which is included in American's fleet. Nevertheless, the various categories of tests administered to plaintiff evaluate basic abilities which are required to fly any aircraft. Test categories such as "Preflight Inspection," "Area Departure and Arrival," "basic instrument procedures" and "Judgment" would seem to evaluate core capabilities of a pilot, regardless of the aircraft on which he is tested. Plaintiff's inability to perform even the most basic procedures, and his exhibition of poor judgment raise grave doubts as to whether he would have been hired by American if his application had progressed beyond the first stage of the selection process. His performance on these tests alone justify the conclusion that plaintiff would not have been hired by American absent any age discrimination.

Moreover, as evidence presented at trial indicates, plaintiff's lack of judgment is not something that has been observed only on isolated occasions, but rather, has been not-ed throughout plaintiff's entire career. An examination of plaintiff's Coast Guard record illustrates several examples of his lack of good judgment. In a Report on Fitness of the Officer ("RFO") covering the period from July 12, 1969, to January 31, 1970, his commanding officer observed that "his constant efforts to be original require monitoring by seniors". See, Defendant's Exhibit 35. The RFO covering the period from January 10, 1969, to July 11, 1969, noted that "his approach to assignments and problems is frequently unorthodox, with varying results." Id. The RFO covering the months between July 23, 1968, and January 9, 1969, described him as "a rather intense person, [who] has a tendency at time[s] to make quick decisions not always based on a thorough review of the facts." Id. The RFO for the period from February 1, 1968, to July 2, 1968, made the following observations:

> His enthusiasm to attain certain goals has occasionally dulled his good judgment and he has followed unorthodox or nonstandard procedures "to get the job done". When assigned duties for which he has personal enthusiasm, he completes same with perfunctory effort. . . . [H]is abuse of standard flight procedures in the HH–52A and inadequate performance as the president of a board of investigation caused me serious concern and several counseling sessions were conducted approximately two months ago.

While it is true that plaintiff's record also contains many references to the fact that he was well liked by his fellow officers and presented a good image to the public, American submits, and the Court agrees, that, in selecting persons who will eventually pilot aircraft carrying in excess of 400 passengers, more emphasis should be placed on an individual's judgment than on his affability.

The Court finds that plaintiff's Coast Guard record also raises strong doubts whether plaintiff would have been hired by American had his application progressed be-

---

**19.** L–382 is the civilian designation of the aircraft, while C–130 is the military designation. The aircraft is a four-engine turboprop cargo aircraft.

yond the first stage of the selection process. The indications of poor judgment contained in this record alone justify the conclusion that plaintiff would not have been hired by American absent any age discrimination. While it is true that the FAA issued an airline transport pilot rating on the Boeing–727 aircraft to plaintiff on August 23, 1979, which the Court takes judicial notice of, this fact alone is not enough to overcome the credible and persuasive evidence presented by American concerning the likelihood that plaintiff would have been hired absent any age discrimination.

In sum, American has demonstrated to the Court's satisfaction that plaintiff would not have been hired whether or not discriminated against on the basis of age. Under the rationale of *East Texas Motor Freight v. Rodriguez, supra*, the Court concludes that the plaintiff has suffered no injury and is not entitled to any relief under ADEA.

## V. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626.

2. Plaintiff has established a *prima facie* case of discrimination on the basis of age under the *Age Discrimination in Employment Act of 1967*, as amended, 29 U.S.C. § 621 *et seq.*

3. Age of less than forty at time of hiring is a bona fide occupational qualification for the position of Flight Officer at American Airlines, Inc., under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(f)(1).

4. Plaintiff is not entitled to any relief under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

## VI. CONCLUSION

In accordance with the foregoing, the Court finds that although plaintiff has es-

1. Pub.L. No. 95–504, 92 Stat. 1705 (Oct. 24, 1978).

2. Plaintiff-intervenor Ray Marshall, Secretary, United States Department of Labor, joins in

tablished a *prima facie* case of discrimination on the basis of age, age below forty at time of hiring is a bona fide occupational qualification for the position of Flight Officer at American Airlines, Inc., within the meaning of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(f)(1). Furthermore, defendant has established that plaintiff would not have been hired in any event, whether or not discriminated against on the basis of age; therefore, plaintiff is not entitled to any relief. Accordingly, the Court dismisses plaintiff's action and enters judgment for the defendant.

## ON MOTION FOR REHEARING

This case is before the Court on plaintiff's Motion for Rehearing, defendant's opposition thereto, and plaintiff's reply. On November 8, 1979, the Court entered a Memorandum Opinion and Order in this age discrimination action granting judgment to defendant, dismissing plaintiff's complaint, and finding, *inter alia*, 1) age of less than forty years at time of hiring is a bona fide occupational qualification (BFOQ) for the position of Flight Officer at American Airlines, Inc., under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(f)(1) (1976); and 2) under the rationale of *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), plaintiff had suffered no injury and was not entitled to any relief under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (1976).

Plaintiff contends the Court "erred as a matter of law" in reaching both of these decisions. Plaintiff asserts, for the first time in this litigation, that the BFOQ issue is controlled by the Airline Deregulation Act of 1978 ("ADA")[1], which, it is claimed, directly conflicts with the Court's finding on this issue.[2] According to plaintiff,

this claim. *See* plaintiff-intervenor's Memorandum in Support of Plaintiff's Motion for Rehearing, filed December 6, 1979.

§ 43(d)(1) of the ADA, 49 U.S.C.A. § 1552(d)(1) (West Supp.1979), effectively prevents age from being a bona fide occupational qualification in the commercial airline industry. In addition, plaintiff claims the Court erred in finding that plaintiff was not entitled to any relief, whether or not discriminated against on the basis of age. Accordingly, plaintiff contends that: 1) judgment in this action, entered November 8, 1979, should be vacated, 2) judgment should be entered for plaintiff, 3) back pay, liquidated damages, costs and attorney's fees should be awarded to plaintiff, and 4) defendant should consider and test plaintiff for the position of Flight Officer at American Airlines, Inc. For the reasons set forth below, the Court denies plaintiff's motion.

Plaintiff contends the following provision of the ADA controls the determination of the BFOQ issue:

> Each person who is a protected employee of an air carrier which is subject to regulation by the Civil Aeronautics Board who is furloughed or otherwise terminated by such an air carrier (other than for cause) prior to the last day of the 10-year period beginning on October 24, 1978 shall have first right of hire, regardless of age, in his occupational specialty, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this title prior to October 24, 1978. Each such air carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except that such air carrier may recall any of its own furloughed employees before hiring such a person. Any employee who is furloughed or otherwise terminated (other than for cause), and who is hired by another air carrier under the provisions of this subsection, shall retain his rights of seniority and right of recall with the air carrier that furloughed or terminated him.

49 U.S.C.A. § 1552(d)(1) (West Supp.1979).

■ The Court notes at the outset that this is the first time in this litigation that plaintiff has advanced this argument. Plaintiff states that the ADA was previous-ly "overlooked", and asserts no persuasive reason for such lack of diligence on his part. Under Rule 59, Fed.R.Civ.P., it is unmistakably clear that rehearings are not to be granted solely to permit the losing party to present arguments or theories which could, and should have been presented at trial, but were not. *Grumman Aircraft Engineering Corp. v. Renegotiation Board*, 157 U.S.App. D.C. 121, 482 F.2d 710, 721 (D.C. Cir. 1973), *rev'd on other grounds*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1973); *Echevarria v. United States Steel Corp.*, 392 F.2d 885, 892 (7th Cir. 1968). Accordingly, it is apparent that most of plaintiff's contentions need not be considered by the Court. Nevertheless, the Court has considered plaintiff's principal contentions on their merits, and finds them unpersuasive.

Initially, it is evident that the ADA offers no protection to plaintiff because he is not a "protected employee" thereunder. *See* 49 U.S.C.A. § 1552(h)(1) (West Supp. 1979). Plaintiff concedes this, but argues that § 43(d)(1) of the ADA, 49 U.S.C.A. § 1552(d)(1) (West Supp.1979), conflicts with the logic of the Court's findings on the BFOQ issue. The Court disagrees.

■ Section 5(a) of the ADA clearly indicates Congress intended that implementation of the legislation should result in "no diminution of the high standard of safety in air transportation attained in the United States on October 24, 1978", 49 U.S.C.A. § 1307(a) (West Supp.1979). The underlying rationale of the Court's findings on the BFOQ issue is the paramount importance of safety in the commercial airline industry. The Court found that American's hiring policy with respect to pilot-applicant age allows future Captains to acquire extensive flight experience. Moreover, the Court concluded upon persuasive and credible evidence that such experience is essential to the safe operation of American's business. The Court finds it without doubt that the elimination of American's hiring policy with respect to pilot-applicant age, as violative of § 43(d)(1) of the ADA, would indeed result in a "diminution of the high standard of safety in air transportation attained in the United States."

There is no indication in the legislative history[3] of the ADA that Congress considered the interplay between the provisions of the ADA and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. Certainly, Congress intended to preserve any age requirements that amount to safety-related bona fide occupational qualifications under law existing on October 24, 1978. The Court finds that § 43(d)(1) of the ADA, 49 U.S.C.A. § 1552(d)(1) (West Supp.1979), must be read to require any "protected employee", seeking to exercise the first right to hire, to satisfy any bona fide occupational qualifications established by the hiring air carrier. See, Airline Employer Protection Program, Proposed Rules, 44 Fed.Reg. 19146, 19150 (March 30, 1979) (to be codified in 20 C.F.R. § 638.11(b)). Only this interpretation preserves the important occupational qualifications required in the interest of air safety. Accordingly, the Court finds no conflict between § 43(d)(1) of the ADA and the finding that age below forty years at time of hiring is a bona fide occupational qualification for the position of Flight Officer at American Airlines, Inc.

Plaintiff also challenges the Court's finding that plaintiff suffered no injury and is entitled to no relief, whether or not discriminated against on the basis of age, because American would not have hired him in any event. In doing so, plaintiff reargues several issues which were before the Court at time of trial. The Court need not, and will not, reconsider these issues. *Grumman Aircraft Engineering Corp. v. Renegotiation Board, supra; Echevarria v. United States Steel Corp., supra.* However, plaintiff contends the Court is "mistaken on a fundamental matter of law" and urges that plaintiff is entitled to back pay and liquidated damages whether or not he is entitled to injunctive relief. The Court recognizes that under certain circumstances, an injured plaintiff who is not entitled to injunctive relief may still be entitled to back pay and liquidated damages. *Rodrigues v. Taylor,* 569 F.2d 1231 (3rd Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Houghton v. McDonnell Douglas Corp.,* 553 F.2d 561 (8th Cir. 1977), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). Such circumstances, however, are not present in the instant case.

The Court has re-examined the evidence on the relief issue and reaches the same conclusion: plaintiff would not have been hired by American, whether or not he was discriminated against on the basis of age. The Court found that plaintiff's Coast Guard record *alone* justifies the conclusion that plaintiff would not have been hired by American. Clearly, aside from basic qualifications such as height, weight and education, plaintiff was *never* competitively qualified, at any age, for the position at American which he sought. Simply stated, plaintiff does not meet American's other qualifications on a competitive basis. Under such circumstances, plaintiff has suffered no injury. *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403–04, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). It is obvious that one who has suffered no injury is not entitled to relief of any kind.

Accordingly, upon consideration of the entire record herein, it is, by the Court, this 17th day of December, 1979,

ORDERED, that plaintiff's Motion for Rehearing shall be, and the same hereby is, denied.

---

**3.** The legislative history and purpose of the ADA, is collected at 1978 U.S.Code Cong. & Admin.News, p. 3737.