United States Court of Appeals,

Fifth Circuit.

No. 94-10033.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC., et al., Defendants,

American Airlines, Inc., Defendant-Appellee.

March 28, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before JONES and STEWART, Circuit Judges, and DUPLANTIER[*], District Judge.

EDITH H. JONES, Circuit Judge:

This is an action for age discrimination, 29 U.S.C. § 621 *et seq.,* brought by the United States Equal Employment Opportunity Commission ("EEOC") on behalf of a class of pilots age forty and over who applied and were denied employment by American Airlines, Inc. ("American"). Two separate claims of discriminatory hiring practices were alleged. First, EEOC charged that American's policy of hiring only pilots who will progress to the rank of Captain discriminated against applicants on the basis of age. Second, EEOC alleged that American intentionally discriminated, as proved by its pattern and practice, against applicants age forty and over who were not excluded by the "years to Captain" policy. The district court granted partial summary judgment for American on the first

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

1

claim, holding that the EEOC's challenge to the "hire-only-Captains/years to Captain" policy is barred by collateral estoppel. In a separate order, 835 F.Supp. 911, the court eliminated EEOC's second claim for insufficient statistical evidence to create a genuine issue of disputed fact. On EEOC's appeal, this court reviews *de novo* a district court's grant of summary judgment. *Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989). We affirm.

I.

BACKGROUND

A. American's General Pilot Hiring Policies

American employs pilots in three cockpit positions of ascending seniority and authority: Flight Officer, Co-pilot, and Captain. In all cases the entry level position at American is Flight Officer. Progression from one cockpit position to another depends on the size of American's pilot workforce, the number of cockpit positions in the fleet, and the terms of the seniority system established in the collective bargaining agreement between American and the pilots' union. The district court relied upon *Murnane v. American Airlines, Inc.,* 482 F.Supp. 135, 144-45 (D.D.C.1979), *aff'd,* 667 F.2d 98 (D.C.Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982):

> It is American's policy to hire only future Captains. In other words, every pilot considered and hired by American is evaluated as a future Captain and is expected to progress to the position of Captain. American has an "up-or-out" policy, which requires the pilot to demonstrate the ability to progress to the next highest cockpit position or be terminated.

\* \* \* \* \* \*

    The Federal Aviation Administration ("FAA") has
promulgated regulations which require American to retire its
Captains and Co-pilots at age sixty ("the FAA age sixty
rule"). American does not allow former Captains, age sixty
and over, to bid back to the Flight Officer position.
Therefore, no pilot who has reached his or her sixtieth
birthday continues to work in an American cockpit.

*Id.* (footnotes & citations omitted).

B. The Challenge to the Age Thirty Guideline

Until 1985, American maintained a general guideline against

hiring persons over age thirty for the beginning position of Flight

Officer. *Murnane v. American Airlines, Inc.,* 667 F.2d 98, 99-100

(D.C.Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72

L.Ed.2d 174 (1982); *Murnane,* 482 F.Supp. at 145 (describing

American's practice as an "unwritten policy against hiring pilot

applicants over age thirty" and noting that American claimed it was

a flexible, not categorical, guideline).

When American did not hire Edward Murnane, a 43-year old

retired military aviator, Murnane sued, asserting that American's

refusal to consider his application solely on the basis of age

constituted age discrimination. *Murnane,* 482 F.Supp. at 138. The

Secretary of Labor intervened as a party plaintiff and the EEOC was

substituted on appeal. American defended the age guideline[1] as a

"bona fide occupational qualification" (BFOQ) that was "reasonably

necessary to the normal operation" of the airline. *Murnane,* 667

---

    [1]Since the ADEA protects only those aged forty or over, the
D.C.Circuit reviewed American's policy as an "age forty
guideline." 667 F.2d at 100 n. 3. For convenience, we also
refer to the policy as an age forty guideline.

3

F.2d at 100. After trial, the district court agreed that the age guideline was a BFOQ and that Murnane was not competitively qualified to be hired in any event. The Court of Appeals for the District of Columbia Circuit affirmed. The court noted that the BFOQ determination was not premised on a finding that older pilots posed a safety concern because of diminished "ability to operate an aircraft in a safe manner. On the contrary, [the district court] concluded that an older Captain who had served in that position for the longest possible time would be the safest Captain." 667 F.2d at 100 n. 4.; *see also id.* at 100 ("the *best* experience an American Captain can have is acquired by flying American aircraft in American's three cockpit positions. Thus, the safest Captain will be experienced, and as much of that experience as possible will have been with American."). Further, *Murnane* held,

> American's intended goal of maintaining a staff of Captains which has the longest possible record of experience in American cockpits is, in our opinion, completely justified.
>
> ... We conclude that American's age forty guideline was a bona fide occupational qualification "reasonably necessary to the normal operation" of American Airlines.

*Id.* at 101.

C. The Years-to-Captain Rule and the Instant Case

American continued to use the maximum age guideline in hiring pilots until 1985, when the airline expanded its operations. As a result of the expansion, pilots progressed more rapidly through the cockpit positions. American needed more pilots. To broaden the pool of eligible pilot applicants, while maintaining its "hire-only-Captains" and "up-or-out" policies, American replaced

4

the age thirty guideline with the "years-to-Captain" rule.  Under the years-to-Captain rule, American periodically projected the length of time necessary for a newly hired pilot to progress through the cockpit positions and to attain the position of Captain.  American based its projections on the number of pilots employed, the expected retirement and attrition rates, and the number of aircraft expected to be in the fleet.  The estimated years-to-Captain are subtracted from sixty (the FAA mandatory retirement age) to determine the age cutoff for pilot applicants during the relevant hiring period.[2]  At some point in 1991, after the EEOC began investigating American's pilot hiring practices, American modified the years-to-Captain rule "to state that applicants must be expected to serve as Captain for a minimum of five years."

Since 1989, the "years-to-Captain" projection has fluctuated from ten to twenty years.[3]  Hence, American expanded the pool of those it was willing to hire to pilot applicants as old as fifty under certain circumstances.

Paradoxically, this loosening of an age-related policy did not elicit kudos from the EEOC but instead prompted a new lawsuit on the two grounds noted.  Each basis of potential liability deserves

---

[2]For example, if American projects that it would take 15 years to become Captain, the age cutoff for pilot applicants would be 45.

[3]In the *Murnane* court's discussion of the age 40 guideline as a BFOQ, it took note of the fact that "it takes at least ten to fifteen years" to progress from Flight Officer to Captain. 667 F.2d at 100.

discussion.

## II.

## COLLATERAL ESTOPPEL

EEOC first contends that American violated the federal age discrimination law by refusing to hire any pilot applicant who, because of age, is not projected to become a Captain before age sixty. American persuaded the district court that this claim is barred by the doctrine of collateral estoppel in light of the vindication of American's policies over the EEOC's challenge in *Murnane.*

> Before collateral estoppel can bar a lawsuit, three elements must exist: 1) the issue at stake must be identical to the one involved in the prior litigation; 2) the determination of the issue in the prior litigation must have been a critical, necessary part of the judgment in that earlier action; and 3) the special circumstances must not exist which would render preclusion inappropriate or unfair.

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684, 691 (5th Cir.1992) (citing *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979)).

> The court of appeals in *Murnane* found:
>
> The issue before the court, then, is whether age is a "bona fide occupational qualification" (BFOQ) which is "reasonably necessary to the normal operation" of the airline business. We conclude that it is.

*Murnane,* 667 F.2d at 100. According to *Murnane,* "American's hiring policies, including the age forty guidelines, might result in the death of one less person than were American required to abandon or modify these policies." *Id.* at 101. Ultimately, the airline's "public duty to operate with the highest degree of safety" was found to "completely justif[y]" American's policies aimed at

"maintaining a staff of Captains which has the longest possible record of experience in American cockpits." *Id.* Because of *Murnane* 's findings, American argues that EEOC should not be allowed to relitigate American's use of age in its hiring practices.[4]

EEOC responds that the defense of collateral estoppel should not be available to American in this case because 1) American's modification of its hiring policy in 1985 (i.e. replacing the age forty guideline with years-to-Captain rule) created "a significant change in the controlling facts," 2) the Supreme Court's decision in *Western Air Lines v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) significantly changed the applicable law and 3) equitable principles counsel against giving preclusive effect to *Murnane* against the different pilot applicants in this case. We do not agree.

A. Has American's Change of Policy Resulted in a Significant Change in Controlling Facts?

EEOC principally asserts that collateral estoppel does not apply because the facts have changed; American's new age-related policy demands a new analysis. *Murnane,* in finding that the age-based policy was a BFOQ, assumed that safety was optimized because the hire-only-Captains, up-or-out, and age forty guidelines

---

[4]There is a strong argument that American's hire-only-Captains rule is not an age-based qualification at all, but an experience-mandating qualification. *See Hazen Paper Co. v. Biggins,* --- U.S. ----, ---- - ----, 113 S.Ct. 1701, 1706-07, 123 L.Ed.2d 338 (1993). The district court did not explore this possibility, however, and we also find it unnecessary to discuss.

produced pilots who could serve as Captains for 10 to 15 years. As a result of that policy, if American hired a "Flight Officer in his forties he would probably not become Captain until his late fifties [and] he would be able to serve only briefly as an American Captain before he had to retire" because of the FAA age sixty rule. *Murnane*, 667 F.2d at 100. Now that the age forty guideline has been replaced by the years-to-Captain rule, however, American may hire a Flight Officer, like Murnane, in his forties, who, if the years-to-Captain is 15, may indeed "serve only briefly as an American Captain." EEOC trumpets that the new, more liberal policy renders the rationale proffered by American in *Murnane* inapplicable.

But EEOC's reading of *Murnane* is too limited. As discussed above, the issue before the court was "whether age is a [BFOQ]" for an airline. 667 F.2d at 100. The court described "American's intended goal" to be "maintaining a staff of Captains which has the longest possible record of experience in American cockpits." *Id.* at 101. The court was persuaded that " "the best experience an [sic] American Captain can have is acquired by flying American aircraft in American's three cockpit positions.' Thus, the safest Captain will be experienced, and as much of that experience as possible will have been with American." *Id.* at 100 (emphasis in original, citation omitted). *Id.* "[B]y limiting its new hiring to *relatively* young pilots, American thereby ensures that the experience with American of its active Captains will be *maximized*. This, as we pointed out above, maximizes safety." (emphasis in

original)  None of these findings is premised on a mandatory period of service as Captain;  rather, they are broad endorsements of American's hiring policies.  *See also id.* at 100 n. 4 ("[A]n older Captain who had served in that position for the *longest possible period of time* would be the safest Captain.")  (emphasis added).

Thus, among the essential facts found by *Murnane* was that American's use of age cutoffs to hire only those who can progress to serve as Captain before mandatory retirement at age sixty was "reasonably necessary to the normal operation of the airline".  This finding is emphasized, as the court succinctly rejected EEOC's argument that American should be made to hire older pilots who could not serve long enough to become captains although they might make safer flight officers and co-pilots:  "it is more important to have a safe *Captain* than a safe *Flight Officer*."  667 F.2d at 100 n. 5 (emphasis in original).  With these underpinnings established, *Murnane* concluded that American could lawfully refuse to hire any applicant aged over forty, because American maximized safety by hiring younger applicants who would progress through the ranks to Captain.

"To produce absolution from collateral estoppel on the ground of changed factual circumstances, the changes must be of a character and degree as might place before the court an issue different in some respect from the one decided in the initial case."  1B JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.448, p. 642 (2d ed. 1994).  It is not enough to avoid the preclusive effect of the prior determination for the EEOC to show merely a change in facts:

9

a change must have occurred in facts that were essential to the judgment and were "of controlling significance." *Montana v. United States,* 440 U.S. at 159-161; 99 S.Ct. at 976-77; *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1167 (5th Cir.1981) (interpreting *Montana* to provide for issue preclusion even where the facts in the second case are slightly different). EEOC's proffered change in "controlling facts" is not of such character or degree. American's age thirty guideline was not a "controlling factor" in the court's analysis. Indeed, because the ADEA protects only those aged forty and over, the court was constrained to construe and approve American's policy as "an age 40 guideline". EEOC would have this court interpret *Murnane* 's liberating holding as a restraint,[5]

---

[5]Specifically, EEOC bases its limited view of *Murnane* on the following passage of the district court's opinion:

> It seems clear that the safest Captain is not an American Captain who first assumes that position at age fifty-five to fifty-nine, but an American Captain who has the depth of experience that is the result of ten to fifteen years flying as a *Captain* for American. The Court concludes that if American were to hire pilots above the age of 40 at the time of hiring, it would not be possible for them to acquire this essential experience before they are forced to retire by the FAA age 60 rule. Therefore, the Court finds that American has a factual basis for believing that all or substantially all pilots of an age above forty at the time of hiring would be unable to perform safely and efficiently the duties of the job involved.

482 F.Supp. at 147. To EEOC, this holding depends on an implied "years in service as captain" requirement. No such limited view of the safety rationale was reflected in the circuit court's decision. Rather, as extensively cited above, that court evinced a desire to allow American to maximize safety under the circumstances at hand, placing emphasis on the safety advantage of "relatively young" pilots with relatively longer experience flying for American. This quoted language supports American's position

10

limiting American to hiring only pilots under forty or losing the protection of *Murnane.* Since the years-to-Captain rule resulted in age cutoffs ranging from 48-50 during 1989 (dropping back to 40-41 in 1992), EEOC argues the safety rationale underpinning *Murnane* can no longer apply to justify American's refusal to hire those pilot applicants older than the resultant age cutoffs. This perverse construction is both counterintuitive and illogical.

This facet of EEOC's complaint alleges not that the ADEA is violated when American hires a 45 year old pilot applicant who is expected to progress to Captain a few years before his sixtieth birthday, but instead when American fails to hire a 45 year old applicant who is not expected to make Captain before the mandatory retirement age. *Murnane* would condone American's refusal to hire, for safety reasons, both classes of applicants under the previous age-forty guideline. But, even if, contrary to our interpretation, *Murnane* also turns on American's use of an age qualification to maximize its pilots' years of service as Captain, as the EEOC argued in the trial court and at oral argument, it does not follow that American's present policy of refusing to hire applicants who could not progress to Captain before retirement is unlawful. In *Murnane,* the EEOC argued that American's hire-only-Captains policy was not supported by the safety BFOQ. That argument was specifically rejected by the circuit court. *Murnane,* 667 F.2d at 100 n. 5 and accompanying text. The promulgation of the

_____

that *Murnane* condoned its use of age without limiting
American to a specific age cutoff.

years-to-Captain rule does not significantly change the controlling facts relating to those applicants, represented by the EEOC in this suit, who could not become Captain before their sixtieth birthday: they would be excluded by both the age forty guideline and the years-to-Captain rule. The difference is that under the age forty rule at issue in *Murnane,* the affected applicants would have been excluded solely because they were over-age without regard to American's needs or expectations, whereas under the status quo the applicants are rejected only if they could not become Captains after acquiring the "best experience" by flying American aircraft in the three cockpit positions. In effect, to deem American's years-to-Captain rule as a "change in circumstances" that negates collateral estoppel would subject American to another trial to defend the hire-only-Captains/up-or-out policy vindicated in *Murnane.*[6]

EEOC also argues that American's adoption of a policy which permits the hiring of older pilots who could potentially become Captain as late as age 59 undercuts American's proffered defense in *Murnane* that the air carrier used age as a device to maximize pilots' years of service, and hence safety, as Captain. We

---

[6]That EEOC's challenge to the years-to-Captain rule flies in the face of *Murnane* is evident from the agency's posture here. By representing would-be American pilots in their fifties, EEOC necessarily rejects American's view that airline safety is maximized by nurturing the progression of pilots through the cockpit positions in American's aircraft. But American's reasoning was approved by the courts in *Murnane,* and the airline should not be required to relitigate the soundness of that position simply because American changed the method of calculating the required progression.

12

disagree with EEOC's premised reading of *Murnane* and with its conclusion. American's adoption of the years-to-Captain policy does not significantly change the fact that American's hire-only-Captains policy results in the selection of pilots who will become Captains "with the longest possible record of experience in American cockpits." Indeed, as between the applicants who are selected because they will become Captain, even if only briefly, before their sixtieth birthday, and the applicants on whose behalf the EEOC brings this suit who cannot become Captains before their sixtieth birthday, only American's selection of the former would "ensure that the experience with American of its active Captains will be maximized." 667 F.2d at 100 and n. 4. The adoption of the years-to-Captain policy may have significantly changed the circumstances with respect to applicants like Edward Murnane who were rejected by the age forty guideline before 1985 but could have served as Captains for a few years pre-retirement. But EEOC does not here represent those applicants on such a claim. Instead, EEOC pursued this claim on behalf of only those applicants who could not become Captain under the years-to-Captain rule.[7] The claim is barred because it was conclusively determined in favor of American by the court in *Murnane.*

B. Did the Supreme Court's *Western Air Lines v. Criswell* Decision Change the Controlling Legal Principles?

Noting that a "significant "change in the legal climate' " may

---

[7]Indeed, the EEOC listed as claimants 6 applicants who were over 60 years old at the time they applied, and 51 applicants who were between the ages of 55-59 when they applied.

defeat collateral estoppel where "modifications in "controlling legal principles' ... could render a previous determination inconsistent with prevailing doctrine," *Montana v. United States,* 440 U.S. at 161, 99 S.Ct. at 977, EEOC proffers the Supreme Court's ruling in *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) as such a change in ADEA law since *Murnane.* This argument is easily refuted.

*Criswell* clarified that a BFOQ defense relating to safety concerns in an ADEA case may succeed if the use of age was "reasonably necessary to the normal operation" of the employer's business; the Court rejected Western's argument that an employer needed only to establish a "rational basis in fact" for its age-based employment criterion. 472 U.S. at 421, 105 S.Ct. at 2755. In so holding, the Court expressly adopted the reasoning in *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir.1976). *Criswell,* 472 U.S. at 412-17, 105 S.Ct. at 2751-53. *Tamiami,* as the Court observed, had already been approved by every circuit court confronting the issue, by EEOC, and implicitly by Congress. *Criswell* approvingly recited *Tamiami* 's objective standard for reviewing the employer's claim that safety justified the age qualification in selecting bus drivers:

> "[T]he job qualifications which the employer invokes to justify his discrimination must be reasonably necessary to the essence of his business—here the *safe* transportation of bus passengers from one point to another. The greater the safety factor, measured by the likelihood of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications designed to ensure safe driving." 531 F.2d at 236.

This inquiry "adjusts to the safety factor" by ensuring that

the employer's restrictive job qualifications are "reasonably necessary" to further the overriding interest in public safety. *Ibid.*

*Criswell,* 472 U.S. at 413, 105 S.Ct. at 2751 (emphasis in original). The Court stated that Congress did not ignore the public interest in safety in adopting the BFOQ standard of "reasonable necessity":

> That interest is adequately reflected in instructions that track the language of the statute. When an employer establishes that a job qualification has been carefully formulated to respond to documented concerns for public safety, it will not be overly burdensome to persuade the trier of fact that the qualification is "reasonably necessary" to the safe operation of the business. *The uncertainty implicit in the concept of managing safety risks always makes it "reasonably necessary" to err on the side of caution in a close case.* [FN 29]
>
> FN 29. Several Courts have recognized that safety considerations are relevant in making or reviewing findings of fact. [listing cases including *Murnane,* 667 F.2d at 101]. Such considerations, of course, are only relevant at the margin of a close case, and do not relieve the employer from its burden of establishing the BFOQ by the preponderance of the evidence.

*Criswell,* 472 U.S. at 419 & n. 29, 105 S.Ct. 2754 & n. 29 (emphasis added). *Criswell* rejected Western's novel "rational basis" standard, which if adopted, would appear to give complete deference to the employer's decision whenever the employer could produce an expert willing to testify as to a rational basis for the reliance on age. *Criswell,* 472 U.S. at 423, 105 S.Ct. at 2756.

EEOC contends that the *Murnane* decision was based on a now-impermissibly deferential acceptance of American's safety rationale for its hiring practices. Specifically, EEOC points to the district court's findings that "American should be able to apply a reasonable general rule in order to minimize the risks of

15

the disastrous consequences of an airline accident," and that "American's hiring policy implements such a rule." *Murnane,* 482 F.Supp. at 147. EEOC argues that the appeals court "echoed" the district court's improperly deferential approach, citing selected parts of the following passage:

> As the district court observed and emphasized, the airline industry is one in which safety is of the utmost importance. The staggering death tolls and resulting human suffering which have followed some of our nation's horrible air disasters attest to this fact. Therefore, in our judgment, the airline industry must be accorded great leeway and discretion in determining the manner in which it may be operated *most safely, Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 n. 30 (5th Cir.1976). This is in accord with America's view that "safe" is not sufficient. Rather the "safest" possible air transportation is the ultimate goal. Courts, in our view, do not possess the expertise with which, in a cause presenting safety as the critical element, to supplant their judgments for those of the employer.

*Murnane,* 667 F.2d at 101 (emphasis in original).

Reviewing the *Murnane* holdings as a whole, we conclude that both the district and appellate courts applied the proper standard. Although the district court in *Murnane* used the term "reasonable" once while discussing the standard to be applied to American, 482 F.Supp. at 147, it had repeatedly stated in the preceding discussion its finding that American's policies were "reasonably necessary." *Id.* Further, the district court did not "completely defer" to the airline's discretion as prohibited by *Criswell.* Rather, the district court conducted a lengthy and thorough review of the record that substantiated American's position. *Id.* at 145-47. And, contrary to EEOC's position, the district court did not relieve American of its burden of proof but instead stated: "In attempting to implement the [BFOQ] exception of the Act, American

16

has the burden of proving its actions were within the scope of the exception."  *Id.* at 144.

The District of Columbia Circuit Court's decision in *Murnane* admits of no *Criswell*-based infirmities.  Indeed, the appellate panel presciently cited the same passage of *Tamiami* quoted extensively by the Supreme Court in *Criswell.  Compare Murnane,* 667 F.2d at 101, *with Criswell,* 472 U.S. at 413, 105 S.Ct. at 2751 (passages quoted above).  Just as *Criswell* rejected the proposition of "complete deference" suggested by Western in favor of the settled *Tamiami* standard, *Murnane* self-evidently applied the proper test and evidentiary burdens:

> In sum, there was ample factual evidence and legal precedent to support the findings of the district court.  We conclude that American's age forty guideline was a bona fide occupational qualification "reasonably necessary to the normal operation' of American Airlines.

667 F.2d at 101.  Because *Criswell* changed no controlling legal principles relied upon by the court in *Murnane,* there is no reason to deprive the *Murnane* determinations of their preclusive effect here.

C. Do Special Circumstances Warrant an Exception to the Normal
   Rules of Preclusion?

EEOC's equitable and policy considerations advanced against the application of the normal rules of issue preclusion were properly rejected by the trial court.

The Supreme Court has decisively rejected attempts by government agencies to avoid the bar of issue preclusion in order to litigate repetitively against the same defendant on virtually the same facts.  *United States v. Stauffer Chemical Co.,* 464 U.S.

17

165, 172, 104 S.Ct. 575, 578-80, 78 L.Ed.2d 388 (1984); *Montana v. United States,* 440 U.S. 147, 162-64, 99 S.Ct. 970, 978-79, 59 L.Ed.2d 210 (1979). Rejecting policy arguments similar to those made here, the Court stated:

> Indeed we think that applying an exception to the doctrine of mutual defensive estoppel in this case would substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy.

*Stauffer Chemicals,* 464 U.S. at 173, 104 S.Ct. at 579. EEOC advances no authority to suggest that these decisions do not remain authoritative. This argument is frivolous.

In light of the absence of any significant change in controlling facts and legal principles and any rule allowing "special circumstances" to prevent the application of issue preclusion, the trial court properly granted summary judgment for American on EEOC's challenge to American's hire-only-Captains years-to-Captain guidelines on behalf of claimants who could not become Captains before reaching their sixtieth birthday.

III.

THE SUFFICIENCY OF EEOC'S STATISTICAL ANALYSIS

EEOC's second claim is that American intentionally discriminated as a matter of pattern and practice against applicants age forty and over who were not otherwise excluded from consideration by American's hire-only-Captains policy. EEOC initially sought to prove this allegation solely by offering a statistical analysis that applicants over forty were rejected in disproportionate numbers to those under the age of forty. American challenged the relevance of the statistical analysis because it

18

compared hired candidates to all applicants in each age group, regardless of qualifications. Responding to American's second summary judgment motion, EEOC revised its analysis to exclude applicants whom American disqualified for eight precise reasons;[8] according to the new results, 33.6% of the applicants under forty not disqualified by the stated facts were hired, whereas only 23.1% of the applicants over forty not so disqualified were hired. Significantly, in its Response to American's Second Motion for Summary Judgment, EEOC cited no cases and made no legal arguments other than to agree with American that "the relevant comparison in a pattern and practice involving an allegation of age discrimination in hiring is between *qualified* applicants over and under age 40." (citing American's Brief in Support of Summary Judgment which cited *Hazelwood School District v. United States,* 433 U.S. 299, 308-09, 97 S.Ct. 2736, 2741-42, 53 L.Ed.2d 768 (1977) (emphasis in original)).

American renewed its objection to the new statistics, complaining that EEOC had yet to produce a comparison of those pilots hired to those qualified to be hired as pilots for American. At best, EEOC's new comparison measured pilots hired against those who applied, while eliminating some applicants who were

---

[8]EEOC's expert declared that he modified his analysis to take into account the following criteria for exclusion which had been listed by American in its motion: 1) exclusion by Years to Captain Rule, 2) failed medical exams, 3) insufficient total flight hours, 4) insufficient recent flight hours, 5) refusal to proceed with the application, 6) failure to show up for interview, 7) prior employment with Eastern Airlines, and 8) having a close relative employed at American. Declaration of Jack Kearns, p. 3 (R. 642).

disqualified by a few obvious criteria. American offered deposition excerpts from EEOC's statistical expert admitting that the EEOC had only eliminated those applicants who were disqualified by the threshold criteria American had identified in the Second Motion for Summary Judgment. The expert conceded that other such criteria may have been unaccounted for by his analysis. He further admitted that certain hiring policies and criteria not considered in his analysis may have further reduced the apparent age disparity in the hiring percentages. The expert admitted that, among other deficiencies in the analysis, he had not removed from the applicant pool the pilots who failed to pass a flight simulator test. For these reasons, American urged that EEOC's statistics did not support an inference of intentional discrimination, and summary judgment was proper. EEOC did not respond. The district court granted summary judgment for American because the EEOC had failed to meet its burden of coming forward with summary judgment evidence proving that its statistical comparisons are between those hired and those qualified as required by *Hazelwood School District v. United States, supra.*

On appeal, EEOC advances several elaborate arguments to rescue its statistical analysis from summary judgment. Those arguments were not, however, presented to the trial court, which was invited simply to determine, by the parties' agreement, whether EEOC had offered sufficient proof that *qualified* pilot applicants over forty were rejected by American at a greater rate than younger applicants. *Hazelwood, supra; Anderson v. Douglas & Lomason,* 26

F.3d 1277, 1286 (5th Cir.1994). EEOC did not attempt to show that the over-40 applicants were qualified, but only that they applied and were not disqualified by a fixed but narrow set of criteria.[9] The district court did not err in finding EEOC's proof insufficient to create a genuine issue of intentional discrimination.

IV.

CONCLUSION

For the reasons provided, the district court's grant of final summary judgment for American on EEOC's two claims of ADEA violations is AFFIRMED.

---

[9]The agency asserts in this court that for purposes of making a prima facie pattern-and-practice discrimination case, it need not demonstrate that each of the rejected applicants from a protected class would have been fully qualified under the particular employer's criteria, but only that they were generally equipped for employment. As a general principle, it is accurate that gross statistical disparities alone in an employer's hiring patterns may constitute prima facie proof of intentional discrimination. *Hazelwood, supra.* The cases do not as yet specify what level of qualification for employment is sufficient to undergird such a statistical case. Intuitively, the level of qualification must be correlated to the sophistication of the job duties; the job of corporate chief financial officers, for instance, would not readily yield a statistical case for discrimination by pattern and practice. See *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 501-02, 109 S.Ct. 706, 726, 102 L.Ed.2d 854 (1989) ("But where special qualifications are necessary, the relevant statistical pool for purposes of demonstrating discriminatory exclusion must be the number of minorities qualified to undertake the particular task." (citing *Hazelwood, supra* )). To the extent this subtle inquiry involves factual and legal considerations, EEOC chose not to raise it in the district court and may not do so now.

21