OPINION
ALARCÓN, Circuit Judge.
Melissa Anspach and her parents (“the Anspachs”) sued the City of Philadelphia and certain employees of the City’s Department of Public Health (“Appellees”) for alleged violations of their First and Fourteenth Amendment rights to parental guidance, family privacy, and bodily integrity pursuant to 42 U.S.C. § 1983. The District Court concluded that the claims raised in the Anspachs’s amended complaint have already been litigated in both the district and circuit courts, and dismissed the Anspachs’s federal claims as barred under the doctrine of collateral es-toppel.[1] The Anspachs have appealed that ruling as erroneous. We affirm.[2]
*182 I
A
The underlying facts and procedural history are set forth in detail in Anspach I, 2005 WL 1519014 at *1-2, 2005 U.S. Dist. LEXIS 12546 at *2-5, Anspach II, 503 F.3d at 259-60, and in the order on appeal, Anspach v. City of Philadelphia, 630 F.Supp.2d 488, 489-90 (E.D.Pa.2008) (“An-spach III ”). The facts are known to the parties; accordingly, we limit our summary of them to those pertinent to the issues presented in this appeal. On January 26, 2004, sixteen-year-old Melissa An-spach visited the City of Philadelphia’s Public Health Center (“the Center”) and requested emergency “morning after” contraceptive pills. After talking to a social worker and signing a consent form, Melissa swallowed four contraceptive pills that were provided to her by Appellee Mary Gilmore, a registered nurse. Nurse Gilmore instructed Melissa to take another four pills twelve hours later. When Melissa asked Nurse Gilmore about availability of medication to alleviate the side-effects of the contraceptive pills, she indicated that there was no such medication available.
Upon taking the second dose of pills early the next morning, Melissa experienced severe stomach pain and began vomiting. After learning that Melissa had taken emergency contraception pills, her parents took her to a hospital emergency room. Melissa was released from the hospital the same day. She later returned to the hospital for treatment because of sub-conjunctive hemorrhaging in her eye that was apparently caused by excessive vomiting.
B
The Anspachs filed an action against the Appellees in state court pursuant to 42 U.S.C. § 1983 on February 10, 2005, in which they alleged Pennsylvania constitutional claims, state law test claims, and a cause of action for violation of the right to due process under the Fourteenth Amendment. Melissa’s parents alleged that their “constitutional rights to familial privacy, and to direct the reaiing and education of their minor children,” were violated by the Appellees. The complaint also alleged that the Appellees violated “Melissa’s constitutional right to receive her parents’ guidance and advice in matters relating to Melissa’s upbringing, privacy, religious beliefs and medical care.”
The Appellees removed this matter to federal court and filed a motion to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The District Court dismissed the Anspachs’s § 1983 claims for lack of subject matter jurisdiction on the ground that “Plaintiffs [] failed to state a claim under federal law,” Anspach I, 2005 WL 1519014 at *1, 2005 U.S. Dist. LEXIS 12546 at *2, and remanded the Anspachs’s state law claims to the Philadelphia County Court of Common Pleas. That Court affirmed the District Court’s order. Anspach II, 503 F.3d at 274.
In conducting discovery in support of their remaining state claims, the Anspachs learned that Nurse Gilmore had misrepresented to Melissa that medication to alleviate the side-effects of contraception pills was unavailable, even though Nurse Gilmore knew of at least two medications that were used for these purposes. Based on this newly discovered evidence, the An-spachs filed an amended complaint in state court on May 5, 2008. They alleged that the Appellees violated Kurt and Karen Anspach’s “constitutional rights to familial privacy, and to direct the rearing, education and medical care of their minor children,” as well as “Melissa’s constitutional right to privacy, including her right to bodily integrity, her right to receive her *183 parents’ guidance and advice in matters relating to Melissa’s upbringing, privacy, religious beliefs and medical care.” In addition, the Anspachs alleged in their amended complaint, that in distributing the “morning after pills” to Melissa, the Appellees also violated Title X of the Public Health Service Act, 42 U.S.C. §§ 300-300a-8.
The Appellees again removed the action to federal court. The Appellees filed a motion to dismiss the federal claims pursuant to Rule 12(b)(6). They asserted that the federal constitutional claims were barred by the doctrine of collateral estop-pel. The District Court concluded that the Anspachs’s substantive due process claims were barred by the doctrine of collateral estoppel. It also held that the Anspachs failed to state a claim under Title X. The District Court declined to exercise supplemental jurisdiction over the state law claims. The Anspachs appeal from the District Court’s rulings as to their parental guidance and bodily integrity claims, but do not challenge the dismissal of their Title X claims.
II
The Anspachs argue on appeal that the District Court erred in dismissing their federal due process claims as barred by the doctrine of collateral estoppel. They contend that Nurse Gilmore’s false statement to Melissa about the unavailability of anti-nausea medication creates a “new and qualitatively different factual setting” demonstrating “coercion, manipulation, or restraining conduct by the State” which supports their § 1983 claim. (Appellants’ Br. 37-38.) We review the district court’s application of the doctrine of collateral estop-pel for abuse of discretion. McLendon v. Cont’l Can Co., 908 F.2d 1171, 1177 (3d Cir.1990) (citing Parklane Hosiery, Inc. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).
A
The doctrine of collateral estoppel requires a reviewing court to determine whether “(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.” Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir.1995). “When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.” Jean Alexander Cosmetics, Inc. v. L’Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir.2006) (quoting Restatement (Second) of Judgments § 27 (1982)).
In determining that the Anspachs were collaterally estopped from re-litigating the federal claims alleged in their amended complaint, the District Court concluded that, with the exception of the Title X claim, there were no differences in the allegations previously litigated by the An-spachs — against these same Appellees— and those in the amended complaint. Anspach III, 630 F.Supp.2d at 493. The District Court reasoned as follows:
the plaintiffs themselves do not dispute that they are re-asserting Melissa’s bodily integrity or her and her parents’ Fourteenth Amendment claims. Rather, they • allege only that their reassertion of these claims “is based on evidence that was unavailable and/or unknown to plaintiffs when plaintiffs drafted and filed their initial complaint.” Even if we were to assume for the sake of argument that such newly discovered evidence is a valid ground upon which to consider anew a previously adjudicated claim, at *184 no time have the plaintiffs even revealed what this new evidence is.
Anspach III, 630 F.Supp.2d at 493 n. 5 (citation omitted).
The District Court determined that “the four elements required to invoke collateral estoppel [were] present,” Anspach III, 630 F.Supp.2d at 491, as to all of the issues that are raised in this appeal. We agree.
The Anspachs have conceded that they are “reasserting] Melissa Anspach’s bodily integrity claim and Mr. and Mrs. An-spach’s parental rights claims” that were previously litigated. (Appellants’ Br. 29.) The Anspachs also do not dispute that the previous determination was necessary to the decision, or that they were represented in the prior action. Their only argument in this appeal is that collateral estoppel does not apply to the allegation in their amended complaint because “the issues decided previously are' not identical with the issue raised by [their] amended complaint.” (Appellants’ Br. 33.)
Issues litigated in a prior action have preclusive effect if the controlling facts essential to the judgment remain unchanged in the later action. Montana v. United States, 440 U.S. 147, 159, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); see also Comm’r of Internal Revenue Serv. v. Sunnen, 333 U.S. 591, 599-600, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (collateral estoppel applies where “the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged”). “To produce absolution from collateral estoppel on the ground of changed factual circumstances, the changes must be of a character and degree as might place before the court an issue different in some respect from the one decided in the initial ease.” EEOC v. American Airlines, 48 F.3d 164, 168 (5th Cir.1995).
The Anspachs argue that the issue presented in this matter is similar to the question addressed in Hawksbill Sea Turtle v. Fed. Emer. Mgmt. Agency, 126 F.3d 461 (3d Cir.1997). In Hawksbill Sea Turtle, this Court held that “when significant new facts grow out of a continuing course of conduct, the issues in a successive suit may fail to constitute the same ‘issue’ as to merit preclusive effect.” Id. at 477.[3] The Anspachs maintain that the newly discovered evidence of Nurse Gilmore’s false *185 statement to Melissa about the unavailability of anti-nausea medication creates a “new and qualitatively different factual setting,” similar to that found in Hawks-bin, because it demonstrates “manipulative and coercive conduct that this Court did not find in the initial complaint.”[4] (Appellants Br. 37, 40.)
The Anspachs have not shown how Nurse Gilmore’s false statement significantly changes the controlling facts, or otherwise establishes coercion, manipulation, or restraining conduct by the State sufficient to bar the application of collateral estoppel. While the evidence of Nurse Gilmore’s false statement may be new, it is not “qualitatively different” from the factual allegations that were before the District Court and this Court in the prior litigation. In Anspach II, this Court held that the Anspachs failed to demonstrate a due process violation because “the conduct complained of was devoid of any form of constraint or compulsion.” 503 F.3d at 264. Nurse Gilmore’s false statement about the unavailability of pain pills is not significant enough to alter the controlling facts of this case. Accordingly, we conclude that the District Court did not abuse its discretion in concluding that federal constitutional claims raised in the Anspachs’s amended complaint are barred by the doctrine of collateral estoppel.
The District Court’s judgment is AFFIRMED.

. The Anspachs originally filed suit against these same defendants in a state court action filed in February 2005, alleging federal constitutional claims pursuant to 42 U.S.C. § 1983. Defendants removed the matter to federal court and moved to dismiss the claims pursuant to Fed.R.Civ.P. 12(b)(6). The District Court granted the motion, dismissing the Anspachs’s § 1983 claims for lack of subject matter jurisdiction on the ground that "Plaintiffs [] failed to state a claim under federal law.” Anspach v. City of Philadelphia, 2005 WL 1519014, at *1, 2005 U.S. Dist. LEXIS 12546, *2 (E.D. Pa. June 27, 2005) ("Anspach I”) aff'd Anspach v. City of Philadelphia, 503 F.3d 256 (3d Cir.2007) (“Anspach II") (affirming the District Court's ruling in a forty-seven-page published opinion).

. The District Court had jurisdiction over the Anspachs's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Anspachs's state law claims under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court’s dismissal of a complaint under Rule 12(b)(6) is plenary. Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir.2007).

. The plaintiffs in Hawksbill filed two actions seeking to enjoin construction projects that threatened endangered sea turtles and snakes following a hurricane that had struck the island of St. Thomas in 1995. Id. at 463. In the first suit, Judge Finch denied the relief requested in part because he concluded that no Tree Boas existed on the project site. Id. at 465. Six months later, in the second action before Judge Brotman, plaintiffs presented “new and qualitatively different evidence” than that which was before Judge Finch. Id. Specifically, plaintiffs presented evidence of live, injured, and dead Tree Boas near the project site. Id. Judge Brotman gave preclu-sive effect to Judge Finch's prior order and held that plaintiffs were collaterally estopped from re-litigating their claim for federal protection of the endangered species. Id. at 464. The plaintiffs appealed. Id.
This Court reversed, holding that Judge Brotman erred in giving preclusive effect to Judge Finch's findings because “[u]nder these circumstances, it was incumbent upon Judge Brotman to ground his findings on the new evidence.” Id. at 465. This Court explained that "[c]ollateral estoppel applies ... when the same issues decided in the past action arise again in the present context, [but] when significant new facts grow out of a continuing course of conducl[,] the issues in a successive suit may fail to constitute the same 'issue' so as to merit preclusive effect.” Id. at 477 (citations omitted) (emphasis added).
This Court also held in Hawksbill that the first preliminary injunction hearing had no preclusive effect on the second one because evidence had recently come to the light that the construction project would last much longer than anticipated during the first hearing. Id. at 465.

. The Anspachs argue that Nurse Gilmore's false statement shows that she was motivated by a desire either to "keep Mr. & Mrs. An-spach in the dark about their daughter's health,” or, "to insure that Melissa swallowed the second batch of pills ... irrespective of the risk associated with this medication.” (Appellants' Br. 49; Appellants' Reply Br. 7.) The Anspachs offer no evidence in support of the motives they ascribe to Nurse Gilmore, and admit that they did not “spell out the two likely explanations for [Nurse] Gilmore's deception in their complaint.” (Appellants' Reply Br. at 9.)